UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CANAL INSURANCE COMPANY, a South Carolina corporation,<br><br>                 Plaintiff,<br><br>    v.<br><br>YMV TRANSPORT, INC., a Washington Corporation; MIKHAIL YASINSKIY, an individual; SERGEY V. YASINSKIY aka VLADAMIR SERGEEVICH YASINSKIY, an individual; M&H TRAILERS, INC., an Oregon Corporation; HERBERT RODRIGUEZ, an individual; DEBORAH BETTS, as Special Administrator for the Estate of CB, a minor, deceased; DEBORAH BETTS, as mother and next friend of PB, a minor; DEBORAH BETTS, an individual; MICHAEL C. BETTS, JR., an individual; KRISTIE GARRET, as personal representative for the estate of MB; KRISTIE GARRETT, as mother and next friend of Aspen Betts; and KRISTIE GARRETT, an individual.<br><br>                 Defendants. | CASE NO. C10-2038-RSM<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Canal Insurance Company's Motion for Summary Judgment. Dkt. # 26. The underlying lawsuit giving rise to this action involves a 2008 collision between a tractor-trailer and a passenger vehicle. In this action, plaintiff Canal Insurance Company ("Canal") seeks two declaratory rulings: (1) that Canal owes no duty of defense or indemnity to defendants YMV Transport, Inc. ("YMV"), Michael Yasinskiy, Sergey Yasinskiy, Herbert Rodrigues, and M&H Trailers, Inc. ("M&H") with respect to the claims alleged in the underlying lawsuit; and (2) that the MCS-90 endorsement in YMV's insurance policy with Canal is not applicable to the claims in the underlying lawsuit. Defendants Deborah Betts, individually and in her representative capacities, and defendant Kristie Garret have filed responses in opposition to Canal's motion for summary judgment. For the reasons set forth below, plaintiff's motion is GRANTED in part and DENIED in part.

## II. BACKGROUND

YMV is the named insured on a Canal insurance policy. M. Yasinskiy was the sole owner of YMV, which closed its doors in approximately April, 2008, four months after the collision with the Betts' family vehicle. S. Yasinskiy worked as an employee or independent contractor for YMV. YMV, M. Yasinskiy, and S. Yasinskiy are defendants in the underlying lawsuit and their defense in that lawsuit is being provided by Canal under a reservation of rights.

M&H is a dissolved Oregon corporation, that also closed its doors in approximately April, 2008. M&H was co-owned by defendants M. Yasinskiy and Herbert Rodrigues and was in the business of manufacturing trailers. S. Yasinskiy may have worked as an employee or independent contractor for M&H as well.

YMV is the named insured on a Canal insurance policy ("the Policy"), executed by M. Yasinskiy on March 1, 2007, which was effective at the time of the accident. The Policy provides that, "[o]nly those 'autos' described in Item Three of the Declarations for which a premium charge is shown" are covered by the Canal Policy. The Business Auto Declarations page of the Policy describes a single auto, a 1999 Volvo truck, used to haul refrigerated produce. The truck involved in the events giving rise to the underlying lawsuit is a 2000 Bering truck. The Bering truck is not listed on the Declarations page of the Policy.

The Policy also provides coverage for some after-acquired "autos." The relevant portion of the Policy reads:

> 2. …[I]f Symbol 7 is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:
>
>   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and
>
>   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

Dkt. # 28, Ex. 1, p. 31. Symbol 7 is the only symbol listed on the Item Two of the Declaration of the YMV Policy. Whether the Bering truck belongs to YMV or M&H is unclear. An Oregon Bill of Sale indicates that the Bering truck may have been purchased by YMV from M&H. However, title was never transferred to YMV. The Bill of Sale is dated March 1, 2007. The Policy began on March 7, 2007. YMV never informed Canal that it wanted coverage for the Bering truck.

The Policy also provides coverage for temporary substitute "autos." The coverage extends to:

> 3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered 'auto' you own that is out of service because of its:
>   a. Breakdown;

    b. Repair;
    c. Servicing;
    d. "Loss"; or
    e. Destruction.

Dkt. # 28, Ex. 1, p. 31. The Volvo truck hauls refrigerated goods. The Bering Truck was customarily used for hauling trailers manufactured by M&H. There are no facts that suggest that the Bering Truck was being used as a temporary substitute for the Volvo truck or that the Volvo truck was broken down, being repaired, undergoing servicing, lost, or destroyed.

  The Policy requires Canal to defend any insured in a suit alleging damages caused by covered autos. The Policy reads:

> We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense" However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply.

*Id.*

  Finally, the Policy contains a federally mandated MCS-90 endorsement that reads in relevant part:

> … the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 *regardless of whether or not each motor vehicle is specifically described in the policy.*

Dkt. # 28, Ex. 1, pp. 55-56 (emphasis added).

  The Bering truck was primarily used by YMV/M&H to deliver trailers that were manufactured by M&H. However, at the time of the collision, the Bering truck was being used to transport four vehicles from Nebraska to Oregon. M. Yasinskiy states that on the day of the collision, he instructed S. Yasinskiy to pick up the vehicles near Omaha, Nebraska as a favor for his friend, "Ivan." Ivan is not a customer of YMV or M&H and M. Yasinskiy does not know

Ivan's last name. M. Yaskinskiy claims that he did not intend to charge Ivan for the services of hauling the vehicles.

### III. ANALYSIS

**A. Procedural Posture**

Initially, the only defendants that appeared in this action were (1) Deborah Betts, as mother and next friend of Patrick Betts and as step mother and next friend of Aspen Betts and as an individual, and (2) Kristie Garrett, as mother and next friend of Aspen Betts, as an individual and as personal representative for estate of Michael C Betts III. On May 6, 2011, Canal moved for entry of default against YMV, M. Yasinskiy, S. Yasinskiy, M&H, Herbert Rodriguez, and Michael C. Betts, Jr. Dkt. # 21. The motion for default was granted by the Clerk of the Court on May 13, 2011. Dkt. # 23. Michael C. Betts Jr. has since appeared in the action. Dkt. # 43. Thus, the Court has before it a motion for summary judgment in an action concerning an insurance policy in which the insured parties are in default but injured third parties have appeared.

The awkward procedural posture of this action concerns the Court because, as it is a declaratory judgment action, any judgment entered against the non-defaulting parties will necessarily affect the rights of the defaulting parties. Nonetheless, the Court has considered the issue and determined that a disposition on Plaintiff's motion for summary judgment is appropriate. The Ninth Circuit recently held that "[a] default entered against an insured policyholder … should not prevent an injured third party … from proceeding on its own behalf." *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1189 (9th Cir. 2009). Indeed, "[t]he argument for permitting another party to proceed is especially powerful in the context of third-party liability insurance, where the insured may lose interest and the injured party has the

primary motivation to pursue the claim." *Id.* Thus, the Ninth Circuit held that the proper way to proceed in such cases, is as set forth by the Supreme Court in 1872:

> The true mode of proceeding where a bill makes a joint charge against several defendants, and one of them makes default, is simply to enter a default and a formal decree *pro confesso* against him, and proceed with the cause upon the answers of the other defendants.... But if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike- the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all.

*Frow v. De La Vega*, 15 Wall. 552, 82 U.S. 552, 554, 21 L.Ed. 60 (1872). This Court shall follow suit.

**B. Coverage and Duty to Defend Under the Policy**

Canal moves for a declaratory judgment that as a matter of law that there is no coverage or duty to defend any party with respect to the accident or the claims in the underlying lawsuit. Only Deborah Betts and Kristie Garret have filed briefs in opposition to Canal's motion for summary judgment and neither Ms. Betts nor Ms. Garret provide any argument or evidence that coverage or a duty to defend any party exists under the terms of the policy.

Under this Court's local rules, "[i]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." Local Rule CR 7(b)(2). Notwithstanding this rule, an unopposed motion for summary judgment presents a special case. A district court may not grant an unopposed motion for summary judgment solely because the opposing party has failed to file an opposition. *See Cristobal v. Siegel*, 26 F.3d 1488, 1494-1495 & n.4 (9th Cir. 1994). *See also* Fed. R. Civ. P. 56, advisory committee note of 2010 ("summary judgment cannot be granted by default even if there is a complete failure to respond to the motion…"). The Court may only grant summary judgment if "the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

Summary judgment is appropriate where "the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FRCP 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing O'Melveny & Meyers*, 969 F.2d at 747). Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.

The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), rev'd on other grounds, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a party ... fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Whether to consider the fact undisputed for the purposes of the motion is at the court's discretion and the court "may choose not to consider the fact as undisputed, particularly if the court knows of record materials that should be grounds for genuine dispute." Fed. R. Civ. P. 56, advisory committee note of 2010. Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

In light of the above, although none of the defendants in this action have challenged Canal's motion for summary judgment with respect to Canal's coverage and defense obligations under the Policy, the Court must make an independent determination regarding whether Canal is

entitled to summary judgment on this issue. In Washington, the standard for interpreting insurance contracts is well-settled. "Interpretation of insurance policies is a question of law and the policy is construed as a whole with the court giving force and effect to each clause in the policy." *American Star Ins. Co. v. Grice*, 121 Wash.2d 869, 874 (1993). The words of an insurance policy should be construed according to their ordinary meaning, according to how an average person would read the terms, as opposed to applying any technical interpretation. *Id.* If the provisions of an insurance contract are unambiguous and easily comprehended, the intent expressed in the policy will be enforced regardless of the intent of the parties. *Jeffries v. General Cas. Co. of America*, 283 P.2d 128 (Wash. 1955). But if an insurance contract is ambiguous "and fairly susceptible of two different conclusions, the one will be adopted most favorable to the insured." *Guaranty Trust Co. v. Continental Life Ins. Co.*, 294 P. 585 (Wash. 1930).

      Here, Canal asserts a number of facts, none of which are disputed, demonstrating that under the plain language of the Policy the Bering truck is not covered. First, the Policy only covers "those 'autos' described in Item Three of the Declarations for which a premium charge is shown." Dkt. # 28, Ex. 1, p. 33. The Bering truck is not listed on the Declarations page. Second, the Policy covers certain after-acquired autos only where the Insured notifies Canal that it wants coverage for such autos. *Id.* at p. 31. Here, if the Bering truck belongs to YMV, it was acquired before the Policy began. *Compare* Dkt. # 27, Ex. 5 (Oregon Bill of Sale dated March 1, 2007) *with* Dkt. # 28, Ex. 1 (Policy dated March 7, 2007). In any case, there is no evidence that YMV informed Canal that it wanted coverage for the Bering truck. Finally, the Policy covers substitute autos that are used with the permission of the owner when a covered auto is being repaired, has been destroyed, or is otherwise out of service. Dkt. # 28, Ex. 1, p. 33. There is no evidence that the Bering truck was being used as a substitute auto for the Volvo truck, which is

the only truck listed on the Declarations Page of the policy. Nor is there evidence that the Volvo truck was in disrepair or out of service. No party disputes these facts and the Court accepts them as true.

In sum, Canal has shown that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law that the Policy does not cover the Bering truck. Since the Policy does not cover the Bering truck, Canal is not liable for damages caused by the Bering truck, YMV, H&M, M. Yasinskiy, S. Yasinskiy, or H. Rodriguez. Further, since Canal's duty to defend only extends to suits for damages to which the Policy applies, Canal does not owe a duty to defend YMV or any other defendant in the underlying lawsuit. *See* Dkt. # 28, Ex. 1, p. 31. Canal's motion for summary judgment with respect to coverage and its duty to defend under the Policy is GRANTED.

**C. Effect of MCS-90 Endorsement**

1. Duty to Defend Under the MCS-90 Endorsement

"[T]he MCS-90 endorsement does not create a duty to defend claims which are not covered by the policy but only by the endorsement." *Harco Nat'l Ins. Co. v. Bobac Trucking*, 107 F.3d 733, 735-36 (9th Cir. 1997). As the Court held above, the claims in the underlying lawsuit are not covered by the Policy. Accordingly, regardless of whether the MCS-90 endorsement applies to those claims, Canal has no duty to defend any party in the underlying lawsuit.

2. Applicability of the MCS-90 Endorsement to the Underlying Claims

The Motor Carrier Act of 1980, codified as Title 49, United States Code, Section 31139, states:

> The Secretary of Transportation shall prescribe regulations to require minimum levels of financial responsibility sufficient to satisfy liability amounts established by the Secretary covering public liability, property damage, and environmental

restoration for the transportation of property by commercial motor vehicle in the United States between a place in a State and a place in another State.

49 U.S.C. § 31139(b)(1)(A). Pursuant to this statutory authority, the Secretary of Transportation set minimum levels of financial responsibility for motor carriers, codified at 49 C.R.F. § 387. The regulation provides that proof of the required financial responsibility may consist of an MCS-90 public liability endorsement and sets forth the language that must be used. *See* 49 C.R.F. § 387.7 & 387.15. The MCS-90 endorsement contained in the Canal Policy is such an endorsement. It provides a broad guarantee that the insurer will pay certain judgments incurred by the insured regardless of whether the vehicle is covered by the policy or the loss is excluded by other terms in the policy. The MCS-90 endorsement, as set forth in the regulation and the Canal Policy, provides:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy.

Dkt. # 28, Ex. 1, p. 55.

The regulations implementing the Motor Carrier Act only apply to (a) "**for-hire motor carriers** operating motor vehicles transporting property in interstate or foreign commerce" and to (b) "**motor carriers** operating motor vehicles transporting hazardous materials, hazardous substances, or hazardous wastes in interstate, foreign, or intrastate commerce." 49 C.F.R. §387.3. Since there is no evidence that the Bering truck was transporting hazardous material, the central issue for the Court is whether YMV is a "for-hire motor carrier." "For hire carriage," is "the business of transporting, for compensation, the goods or property of another." 49 C.F.R.

387.5.  Thus, the Court must determine whether the Bering truck was being operated by YMV to transport the goods or property of another for compensation.

Canal argues that YMV is not a for-hire motor carrier for the puruposes of the applicability of the MCS-90 because it was not operating the Bering truck to transport the goods of another, for compensation, at the of the accident.  Rather, the Bering truck was being used to haul vehicles as a personal favor to M. Yasinskiy's friend, Ivan.  *See*  Dkt. # 27, Ex. 2, 33:2-13 & 35:5-9.  Defendants Betts and Garrett counter that genuine issues of material fact remain regarding whether YMV was expecting compensation for its transport of Ivan's autos; that the characterization of the truck should not turn on what cargo it happened to be carrying at the time of the accident; and that the purpose of the Motor Carrier Act was to protect members of the public, such as the Betts family, from exactly the kind of accident at issue here.  The Court agrees with defendants.

*a. Whether the Berring truck was transporting goods for hire at the time of loss*

The sole basis for Canal's contention that the Bering truck was not operating in a for-hire capacity at the time of the collision with the Betts' vehicle is the statement by M. Yasinskiy:

Q: Who was the friend you were referring to who you were helping out by transporting his vehicles westbound?

A.  His name is Ivan.

Q. What is his last name?

A. I don't know.

Q. Was he a customer of YMV Transport?

A. No.

Q. Was he a customer of M&H Trailers, Inc.?

A. No.

1    Q. Just a personal friend of yours?

2    A. Yes.

3    *    *    *

4    Q. Was payment made by your friend for the transport of the four vehicles that we see in

5    the photographs in this case that were being carried on the trailer and on the flatbed of the

6    truck?

7    A. No, I didn't charge him at all.

Dkt. # 27, Ex. 2, 33:2-13 & 35:5-9. Defendants dispute this characterization of the transaction with Ivan, but present no evidence that would support finding that any compensation was intended to exchange hands for the transport of the vehicles.

"[T]he trial court is not compelled to accept even uncontroverted testimony when it doubts the credibility of a witness." *Smith v. C.I.R.*, 800 F.2d 930, 935 (9th Cir. 1986). Here, the Court has reason to doubt the credibility of the witness. A favor as costly as transporting four vehicles across state lines over a distance of 1,500 to 1,700 miles entirely free of charge is difficult to credit in its own right, let alone where the purported friend can only be identified by first name. Canal has produced no documentation or evidence of any kind to corroborate M. Yasinskiy's story. Accordingly, the Court finds there is a genuine issue of material fact regarding whether the Bering truck was operating in a for-hire capacity when the accident occurred.

Even if the Court were to find that the Bering truck was hauling the vehicles free of charge when it was involved in the collision with the Betts' vehicle, such a finding would not necessarily render the MCS-90 endorsement inapplicable. As noted above, the MCS-90 endorsement only applies where a judgment is entered against an insured for public liability

arising out of the operation of a vehicle that is not covered by the insured's auto insurance policy. To trigger the MCS-90 endorsement, the uninsured or excluded vehicle must be engaged in interstate commerce and carrying goods or property of another for compensation (or carrying hazardous property). The Ninth Circuit has yet to decide whether a vehicle that would otherwise trigger operation of the endorsement is nonetheless excluded if it is not, *at the time of the accident,* engaged in transporting the goods of another for compensation in interstate commerce.

The parties point to a split in authority regarding whether the Court should look to the general character of the vehicle when determining the applicability of a MCS-90 endorsement in an auto insurance policy, or whether the applicability should be determined by reference to the characterization of the vehicle at the time of loss. *Compare Canal Ins. Co. v. Coleman,* 625 F.3d 244, 245 (5th Cir. 2010) ("An important point about the inclusion of an MCS-90 endorsement on an auto insurance policy is that it does not apply on a blanket basis to every accident."), *with Royal Indem. Co. v. Jacobsen*, 863 F.Supp. 1537, 1542 (D.Utah 1994) ("Application of the endorsement should not depend on whether [the insured] was hauling one particular type of product on the day of the accident instead of another."). The Court agrees that such a split exists and the majority of courts have utilized a "trip-specific" approach to determining the applicability of a MCS-90 endorsement. *See Coleman,* 625 F.3d at 251 ("Other courts have varied as to whether they determine the MCS-90's application at the time of the loss, but ours appears to be the majority approach."). The Court disagrees, however, that a trip-specific approach should be utilized where the only inquiry is whether the vehicle was carrying goods of another *for compensation.*

"It is well-established that the primary purpose of the MCS–90 is to assure that injured members of the public are able to obtain judgment from negligent authorized interstate carriers."

*John Deere Ins. Co. v. Nueva*, 229 F.3d 853, 857 (9th Cir. 2000) citing *Harco Nat. Ins. Co., v. Bobac Trucking, Inc.,* 107 F.3d 733, 735 (9th Cir.1997); *Adams v. Royal Indem. Co.,* 99 F.3d 964, 968 (10th Cir.1996); *Empire Fire and Marine Ins. Co., v. Guaranty National Ins. Co.,* 868 F.2d 357, 362–63 (10th Cir.1989). Here, there is no dispute that the Bering truck was an authorized interstate carrier. S. Yasinskiy was driving the tractor and pulling the trailer under the authority of a United States Department of Transportation permit. Dkt. # 39, Ex. 4, 27:12-28:1. The permit numbers were displayed on the doors of the Bering truck. *Id.* at 26:12-25; 27:1-11. Nor do the parties dispute that the truck was being driven in interstate commerce. S. Yasinskiy picked up Ivan's four vehicles in Nebraska on the day of the collision and was in the process of bringing those vehicles to Portland, Oregon. *Id.* at40:9-13; 34:12-19. Accordingly, the accident between the Bering truck and the Betts' family vehicle appears to be exactly the kind of accident that the MCS-90 was meant to address. The Betts family and Ms. Garrett are exactly the type of people who were meant to be protected by MCS-90. *See John Deere Ins. Co. v. Nueva*, 229 F.3d 853, 858 (9th Cir. 2000) ("The Appellants in the instant case are injured members of the public, and thus are precisely the group meant to be protected by the MCS–90.").

      Nevertheless, Canal asks the Court to determine, as a matter of law and of first impression, that the MCS-90 does not apply to judgments obtained by members of the public against negligent authorized interstate carriers where the carrier in question happens to be hauling goods *gratis* on the day the collision occurred. The Court is not convinced that the authority compels this conclusion. Moreover, such an approach is inconsistent with the purposes of the Motor Carrier Act.

      The majority of the cases cited by Canal for the proposition that applicability of the MCS-90 endorsement should be determined at the time of loss involve an inquiry into whether

the vehicle was engaged in interstate commerce at the time of the accident. *See Canal Ins. Co. v. J. Perchak Trucking, Inc.,* No. 3:CV-07-22722009, 2009 WL 959596, at *2 (M.D. Pa. Apr. 6, 2009); *Canal Ins. Co. v. Paul Cox Trucking,* No. 1:05-CV-2194, 2006 WL 2828755, at *4 (M.D. Pa. Oct. 2, 2006); *Lyons v. Lancer Ins. Co.*, No. 7:07-cv-7095, 2010 WL 6442153, at *3 (S.D.N.Y. Oct. 20, 2010); *Branson v. MGA Ins. Co.,* 673 So. 2d 89 (Fl. Ct. App. 1996); *Gen. Security Ins. Co. v. Barrentine,* 829 So.2d 980, 984 (Fl. Ct. App. 2002). The issue of whether a vehicle is traveling interstate is arguably of a different tenor than the issue of whether a vehicle was operating in a for-hire capacity: the former implicates issues of jurisdiction and federalism, the latter is a legislative choice. Indeed, at least one of the cases cited by Canal examined the interstate nature of the trip precisely to ascertain whether state or federal law applied. *See J. Perchak Trucking, Inc.,* 2009 WL at *1 ("If it was operating in interstate commerce, then it may be that consideration of the invalidity argument based upon Pennsylvania law is obviated."). Thus, a choice to determine the applicability of MCS-90 on a trip-specific basis when the interstate nature of travel is at issue does not necessarily compel the conclusion that the same choice should be made with respect to other aspects of applicability under the Motor Carrier Act.

The cases cited by Canal for the proposition that a "trip-specific" approach should be used where MCS-90 applicability issues other than interstate travel are disputed also do not compel a trip-specific approach to the for-hire motor carrier requirement. In *Carlson,* a driver was returning from work, driving his tractor "bobtail" (without a trailer), when the collision took place. 625 F.3d at 245-56. The parties stipulated that the tractor was not transporting property at the time of the collision. *Id.* at 252. The Court held that, since the parties so stipulated, and the Motor Carrier Act only empowered the Secretary of Transportation to prescribe minimum financial responsibility regulations related to *transportation of property* by motor carrier, the

MCS-90 endorsement at issue did not apply. *Id.* Nonetheless, the Court noted that the definition of "transportation" was broad, encompassing "services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property." *Id.* (citing 49 U.S.C. § 13102). It further noted that, "[g]iven the statute's broad terms, it is at least arguable that [the driver's] conduct at the time of the accident could be termed 'transportation of property'." *Id.* Thus, in *Carlson,* the Court's ruling turned entirely on the parties' stipulation. The Court did not hold that the applicability of the MCS-90 endorsement was intended to turn on whether an otherwise eligible tractor happened to have a trailer attached at the time of the accident.

*Canal Indem. Co. v. Williams Logging & Tree Services* is similarly inapposite. *See* 714 F. Supp. 2d 654 (S.D. Tex. 2010). There, the question was whether an MCS-90 endorsement applied to public liability arising out of a collision with a pick-up truck. The question was not whether the pick-up was hauling goods for compensation *at the time of the accident*, but rather whether it *ever* hauled goods for compensation. *Id.* at 655 ("While Logging's hauling trucks may be regulated by the Act, the pickup does not transport items for compensation."). Again, the court made no determination that MCS-90 endorsements were not intended to apply to otherwise eligible vehicles that happen to be transporting ineligible cargo at the time of the collision.

Finally, in *Brunson v. Canal Ins. Co.,* the truck at issue "was deleted from this policy and remained out of service, with no license plate, and parked in Arthur's front yard until the date of the accident." 602 F.Supp.2d 711, 713 (D.S.C. 2007). At the time of the collision, "Arthur was solely on a personal mission to drive the 1989 Volvo tractor-trailer a few miles from his home for the purpose of trying to sell the truck to third-party defendant Emanuel Frierson d/b/a

Frierson's Auto Sales ("Frierson"). *Id.* at 716. Thus, not only was the truck not carrying property of another for compensation, but it was not carrying property at all, and was not involved in interstate commerce. Again, there is no inclination that the court reached the conclusion that the applicability of an MCS-90 endorsement is meant to turn on what particular cargo a truck is hauling at the time of the collision.

Moreover, one of the cases cited by Canal to support a "trip-specific" approach to determining MCS-90 applicability also rejects the idea that MCS-90 applicability should turn on the particular cargo that a truck is carrying at the time of a collision. In *Carlson,* the Eighth Circuit applied a "trip-specific" approach in determining whether a vehicle was involved in interstate commerce when a collision occurred. *Century Indem. Co. v. Carlson*, 133 F.3d 591 (8th Cir. 1998). It then turned to the question of whether the fact that the truck involved was carrying corn –a possibly exempt commodity under the Act – precluded applicability of the MCS-90 endorsement. The Court relied primarily on a determination that the corn was not in fact exempt under the Act. It also noted, however, that "the underlying purpose of the financial responsibility requirements is to promote motor carrier safety and *safety refers to the trucks themselves, not the commodities being transported*." *Id.* at 600 (emphasis added). It went on to state that "[t]he exempt nature of the commodity has no bearing on the application of the MCS–90 endorsement." *Id.*

In *Royal Indemnity Co. v. Jacobsen,* the minority court that did not apply a "trip-specific" approach reached the same conclusion. There, the court examined whether the fact that the motor carrier was hauling hay – an agricultural product not subject to ICC jurisdiction under the Motor Carrier Act – precluded applicability of the MCS-90. 863 F.Supp. 1537 (D.Utah 1994). *Jacobsen* held that "it would undermine the clear intent of the Motor Carrier Act to hold, as

Royal argues here, that the Stinsons are not protected in this case merely because Jacobsen was hauling hay on the day that the accident occurred. *Id.* at 1542.

This Court agrees with *Carlson* and *Jacobsen* that the applicability of MCS-90 should not turn on the particular cargo that a vehicle is carrying on the date in which it is involved in a collision. Such an approach undermines the primary purpose of the MCS–90, which is "to assure that injured members of the public are able to obtain judgment from negligent authorized interstate carriers." *Nueva*, 229 F.3d at 857. Such an approach yields illogical results: the danger to the public is neither increased nor decreased by a driver's happenstance decision to carry one type of good over another, or to charge for that good or haul it for free.[1] Finally, such an approach increases uncertainty with respect to the applicability of the MCS-90 in any given situation, increasing the costs for both the courts and the litigants. *See also Heron v. Transportation Cas. Ins. Co.*, 274 Va. 534, 539 (Va. 2007) ("Regardless of the forces that have motivated the insurance industry to adopt the language of the MCS–90 endorsement, the question presented to us is a simple one of interpreting the plain language of a written contract.") Accordingly, this Court rejects the trip-specific approach in determining whether a motor-carrier is "for hire" under the Motor Carrier Act of 1980.

*b. Whether YMV is a for-hire carrier*

Canal argues in the alternative that YMV is not a for-hire carrier because it never operated the Bering truck in a for-hire motor capacity. The regulations implementing the Motor Carrier Act only apply to (a) "**for-hire motor carriers** operating motor vehicles transporting

---

[1] The question of what constitutes a "trip" also arises under such an analysis. The record does not indicate whether the Bering truck was hauling goods for hire on the way *to* Nebraska. If it was, then the trip-specific approach advanced by Canal would also require that the Court determine that a "trip" is a *one-way trip*, or, worse, some other arbitrary slice of a motor carrier's travels. Such hairsplitting does not advance the purposes of the Motor Carrier Act.

property in interstate or foreign commerce" and to motor carriers operating vehicles transporting hazardous materials. 49 C.F.R. §387.3. "For hire carriage," is "the business of transporting, for compensation, the goods or property of another." 49 C.F.R. 387.5. Canal presents evidence that the common usage of the Bering truck was to transport trailers manufactured by M&H to purchasing customers. Dkt. # 27, Ex. 2, 14:18-15:11. Canal also presents evidence that M&H and YMV operated as one company. M. Yasinskiy, owner of YMV and co-owner of M&H, testified as follows:

> Q. M&H and YMV were the same coffers?
> 
> A. That was the same thing. Whenever we needed him [S. Yasinskiy] to deliver something, he just went ahead and did that.

*Id.* at 19:6-8. H. Rodrigues, co-owner of M&H, testified that there were no fee agreements between M&H and YMV regarding use of the Bering truck. *Id.,* Ex. 6, 21:1-10. The implication is that, since YMV and M&H operated as one, at no point was YMV's Bering truck transporting the goods or property *of another.*

Defendants Betts and Garrett dispute that YMV is a private carrier, operating the Bering truck solely to transport its own goods. They present evidence that the Bering truck bore Department of Transportation and Motor Carrier numbers, under which it was permissible to operate as a for-hire interstate motor carrier. Dkt. # 39, Ex. 4, 26:12-25; 27:1-11; deposition exhibits 2, 4, 5, 6, and 7. The implication is that YMV would not have obtained those permits for the Bering truck if the truck was not generally used in a for-hire capacity.

The court is unable to determine on this factual record whether YMV and M&H, two separate companies, should be considered as one for the purposes of characterizing YMV under the Motor Carrier Act. Moreover, Canal has provided no case law to support such a

characterization under the few facts that *are* at its disposal.  To the extent that Mr. Yasinskiy's testimony is evidence that the Bering truck was not operating as a for-hire motor carrier, the fact that the Bering Truck had obtained a permit from the Department of Transportation that enabled it to operate as a for-hire motor carrier is evidence that it was.  Accordingly, there is a genuine issue of material fact as to this issue.  Canal's motion for summary judgment is DENIED.

## IV. CONCLUSION

The Court, having reviewed Plaintiff's Motion for Summary Judgment, the response and reply thereto, each of the declarations and exhibits, and the remainder of the record, hereby finds and ORDERS:

(1) Plaintiff's Motion for Summary Judgment (Dkt. # 26) is GRANTED in part and DENIED in part as set forth above.

(2) The Clerk is directed to forward a copy of this Order to all Counsel of record.

Dated this 5th day of October 2011.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE